UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT SCHWARTZ ,

    Movant,

      v.                    CR-1-09-067
                          CV-1-13-450

UNITED STATES OF AMERICA,

    Respondent.

## ORDER

    This matter is before the Court on Movant Schwartz's *pro se* Motion for Modification of Sentence and/or Vacation of Conviction Pursuant to 28 U.S.C. § 2255 (doc. no. 94) and a Supplement thereto (doc. no. 96). Thereafter, the Court set a briefing schedule (doc. no. 95). After obtaining an extension, the United States filed its Response (doc. no. 99). Plaintiff filed a Motion for Extension of Time to File Reply and Appointment of Counsel (doc. no. 100). The United States filed a Response (doc. no. 101), to which the Movant replied (doc. no. 102). Also pending are movant's Motion to Stay Payment (doc. no.103), the government's Response (doc. no.104), and movant's Reply (doc. no.105).

## PRIOR PROCEEDINGS

Movant Robert Schwartz was charged in and entered pleas of guilty to a two-count Information charging him with Mail Fraud in violation of Title 18, Section 1341 of the United States Code, with a forfeiture allegation and Filing a False Tax Return in violation of Title 26, Section 7206(1) of the United States Code.

The offense charged in Count One involved the movant's activities as the trustee of the estate of Beverly W. Hersh. When she died in 2009, her will dictated the disbursement of money in certain percentages. Mr. Schwartz is charged with the fraudulent disbursement of money to himself, family, friends, and others. It alleges a loss to the victim, Hadassah, in the amount of approximately $2,492,469.00.

In Count Two, the movant was charged with filing personal tax returns which did not reflect the amount of money he received from the trust and failing to report the tax due on it.

Schwartz's arraignment was held on June 12, 2009. A transcript was generated (doc. no. 19). Schwartz was sworn. While under oath, he verified his knowledge of and agreement with the Information and the Plea Agreement, and confirmed the truth of the Statement of Facts, as each was read into the record. (doc. no. 2). Mr. Schwartz

2

specifically confirmed his understanding of the forfeiture allegation contained in the

Information.

The following Statement of Facts was read into the record during the Hearing:

Defendant Robert Schwartz is an attorney in Cincinnati, Ohio. For approximately 40 years, he has been a sole practitioner specializing in personal injury civil litigation. On or about May 9, 2003, defendant Schwartz was given the Power of Attorney for the financial affairs of a wealthy, elderly friend and client named Beverly W. Hersh. The defendant assisted Mrs. Hersh in preparing several codicils to her will and arranged for the preparation of three trust agreements and subsequent amendments thereto by a local Cincinnati law firm. As of December 13, 2003, pursuant to Beverly Hersh's estate plan, that is, her will and trust agreements as amended, her adjusted estate was to be placed in the Beverly W. Hersh Trust (dtd 09/23/03). Thereafter, the Beverly W. Hersh Trust would distribute the balance of her adjusted estate as follows:

20% Hadassah Hospital
30% Beverly W. Hersh Charitable Trust (dtd 12/13/03)
50% Hersh Revocable Trust (dtd 12/13/03)

Defendant Schwartz was named Mrs. Hersh's executor and trustee for the related trusts. The money designated for the Beverly W. Hersh Charitable Trust was to be distributed to organizations with Internal Revenue Code Section 50l(c)(3) exempt status like Hadassah Hospital ("Hadassah") which was a 501(c)(3) charitable organization. The money designated for the Hersh Revocable Trust was to be distributed at the sole discretion of the defendant as trustee to or on behalf of individuals or to organizations in a manner which would assist them with overcoming financial and substance abuse issues, to live more fulfilling lives and to the provide benefits to those individuals who assisted and befriended Mrs. Hersh during her life. Beverly Hersh died on May 5, 2005. The United States Estate Tax Return (Form 706) filed on or about August 2, 2006 on behalf of the Hersh Estate by defendant Robert Schwartz, Trustee, indicated that Hadassah Hospital was to receive approximately $2,502,469 and the Hersh Charitable Trust was to receive approximately $3,756,703. The remaining residual estate balance of approximately $6,261,172 was to be disbursed at Schwartz' discretion through the Hersh Revocable Trust. This trust was also known as the Hersh Private Trust or the Hersh Discretionary Trust.

## COUNT ONE- MAIL FRAUD

As trustee, defendant Schwartz did not segregate or take any other precautions to invest or otherwise protect the trust funds for the required disbursements to Hadassah Hospital and the Hersh Charitable Trust as specified per the Hersh trust agreements.

Shortly after Mrs. Hersh died, Schwartz as the executor/trustee, began making distributions from the estate and disbursing funds through the

3

Hersh Discretionary Trust. He routed the majority of the trust funds from the Discretionary Trust through accounts or entities he controlled much of which was then used for personal expenditures and asset purchases for family members, employees, friends and close associates.

By approximately August 2008, the defendant disbursed more than $9,000,000 from the Hersh Discretionary Trust which was significantly more than 50% of the estate which was allocated. Meanwhile, defendant Schwartz had made distributions totaling less than $50,000 to recognized charities through the Hersh Charitable Trust. Schwartz made the following contributions to Hadassah Hospital:

December 26, 2006       $5,000
January 11, 2008         $5,000
August 28, 2008          $200,000

Despite the defendant's representations made on the Hersh Estate Tax Return, Robert Schwartz distributed nominal percentages to Hadassah and the Hersh Charitable Trust even though the estate had benefitted from the charitable deductions. It was only after investigating agents spoke with the defendant on August 6, 2008, that Schwartz made the $200,000 distribution to Hadassah. Before that date, defendant  Schwartz knowingly failed to advise  Hadassah that Mrs. Hersh had bequeathed 20%, or $2,502,469, of her estate to the organization despite the representation he made on the estate tax return.

On or about September 1, 2005, a few months after Mrs. Hersh's death, the defendant sent a letter to Hadassah advising only that Hadassah was remembered  by the Hersh trust but it would take time before the distribution would be made. He failed to tell Hadassah what percentage of the estate was left to the organization.  Defendant Schwartz made material misrepresentations and omissions  to both the IRS and Hadassah with the intent to defraud Hadassah of approximately $2,502,469.  He used the United States mail when he sent the estate tax return to the IRS, and he also mailed the letter to Hadassah dated September 1, 2005.

## COUNT TWO- FILING FALSE TAX RETURNS

With respect to his personal income tax matters, on April 14, 2008, defendant Robert Schwartz willfully subscribed to a United States Individual Income Tax Return (Form 1040) for the calendar year 2007 in Cincinnati, Ohio, which was verified by a written declaration that it was made under penalties of perjury. Defendant Schwartz filed this return with the Internal Revenue Service which he knew to be false as to a material matter in that the return omitted a substantial  portion of his gross receipts from his Schedule C and/or Miscellaneous Income figures.  The defendant reported Schedule C-Gross  Receipts totaling  $125,702  for 2007 whereas  his correct gross receipts were approximately  $932,441.   The unreported receipts resulted from defendant Schwartz' failure to report payments he caused to be made to himself for services as the Hersh executor/trustee, from money he diverted from Hersh trust funds to care for his mother, and unreported income from legal fees pertaining to his other clients' personal injury settlements.  The investigation revealed that he also  filed materially false  returns for the years 2002 through 2006.  His total unreported  gross receipts for those years was approximately $2,533,515.

4

I HAVE REVIEWED THIS STATEMENT OF FACTS WITH MY ATTORNEY, JAMES P. FLEISHER, ESQ., AND I AGREE THAT EVERYTHING STATED HEREIN IS TRUE AND CORRECT. I UNDERSTAND THAT THIS STATEMENT OF FACTS WILL BE SUBMITTED TO THE COURT AS EVIDENCE RELATING TO THE CHARGES FILED HEREIN. THIS STATEMENT OF FACTS IS NOT EXHAUSTIVE BUT ARE FACTS THAT ESTABLISH THE ELEMENTS OF THE OFFENSES FOR WHICH I AM CHARGED.

The document was signed by movant. At the conclusion of the recitation of the statement, the following colloquy occurred:

THE COURT: Do you have any corrections, explanations or additions you wish to make to the statement?

THE DEFENDANT: After consulting with counsel, I do not.

THE COURT: Mr. Fleisher, has your investigation into the facts of this case proved the truth of the statement?

MR. FLEISHER: Yes, your Honor.

THE COURT: Is it fair then for me to believe that you are in fact guilty of a violation of Title 18, Section 1341, Mail Fraud, and Title 26, United States Code Section 7206(1), Filing a False Tax Return?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions at this time?

THE DEFENDANT: No, Your Honor. Not at this time.

The Plea Agreement was read into the record in its entirety. In the Plea Agreement between the movant and the United States, the parties agreed and stipulated that (a) the readily provable fraud loss caused by the movant was $2,492,469; this amount was reasonably foreseeable to the movant in connection with the scheme; and the movant's Guideline range should be calculated based on this amount pursuant to U.S.S.G. § 1B1.3; (b) defendant abused a position of private trust pursuant to U.S.S.G. § 3B1.3. which calls for a two-level upward adjustment; and that, as of the date of the agreement,

5

the defendant was entitled to the three-level reduction pursuant to U.S.S.G. § 3B1.3(a) and (b). The defendant understood that mandatory restitution in the amount of at least $2,492,469 would be ordered paid to Hadassah Hospital as well as restitution to the United States for the tax offense.

Mr. Schwartz also agreed, under oath, to the following terms contained in the Plea Agreement:

> "14. By signing this document, the defendant acknowledges the truth of the attached Statement of Facts which is made a part of the plea agreement and submitted as evidence."
>
> "16. This written document embodies all of the agreements and understandings reached between the United States and the defendant. No other conversations, discussions, understandings, or other documents extraneous to this plea agreement shall be considered part of this plea agreement. By signing this plea agreement, defendant acknowledges that he has fully discussed all of its terms with his counsel and understands and accepts each of those terms knowingly and voluntarily, that he is fully satisfied with the representation and assistance of his defense attorneys in this criminal case."
>
> "19. The plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement. There have been no representations or promises from anyone as to what sentence this Court will impose, other than as described in this agreement."

At the conclusion of the recitation of the Plea Agreement, the following colloquy occurred:

THE COURT: Mr. Schwartz, is that your signature at the end of the agreement?

THE DEFENDANT: Yes.

THE COURT: Are the promises and agreements you made in the plea agreement the truth?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anyone made any promises other than the plea agreement that induced you to plead guilty?

THE DEFENDANT: There have been none.

6

THE COURT: Aside from the plea agreement which we've just talked about, has any person, including an officer or agent of the government, a lawyer, anyone, promised or even suggested that you'll receive a lighter sentence or any other form of leniency if you plead guilty?

THE DEFENDANT: No, there's not.

THE COURT: Have any threats been made which induced you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you have any questions at this time? And if you are concerned about addressing the question directly at me, why, address it through Mr. Fleisher.

THE DEFENDANT: I'll take a moment.

THE COURT: All right.

(The defendant and his counsel confer privately.)

THE DEFENDANT: No questions, Your Honor. Thank you.

THE COURT: Is it fair then – well, is there a – well, is it fair then for me to believe that this decision of yours to plead guilty is your voluntary act and deed?

THE DEFENDANT: That may be presumed, yes.

THE COURT: And is it fair for me to believe that you're pleading guilty here today with a full understanding of the charge against you and consequences of that plea of guilty?

THE DEFENDANT: Yes.

The Court repeatedly asked Mr. Schwartz questions to verify his knowledge of the charges and the result of his pleas.

His guilty pleas subjected movant Schwartz to a sentence of imprisonment of twenty years, a fine of $250,000.00 or twice the gross gain or loss, restitution, a special assessment, forfeiture, and supervised release in Count One and a sentence of

imprisonment of three years, a fine of $250,000.00, restitution, a special assessment, forfeiture, and supervised release in Count Two.

The Court ordered a Presentence Investigation Report to be prepared. There were no objections to the recommendations contained therein, that a level 23 with a sentencing range of 46-57 months was appropriate. The presentence report disclosed that the government did not believe Mr. Schwartz deserved the extra point for acceptance of responsibility and would not be filing the motion required for Schwartz to receive it. The guideline offense level would then become 24 with a sentencing range of 51 to 63 months.

A Sentencing Memorandum was filed by each party (doc. nos. 34 and 36). A response to defendant's was filed by the government (doc. no. 39). A Sentencing Hearing was held on June 8, 2010. Transcripts were generated (doc. nos. 51, 52, 53, and 54).

Prior to the Sentencing Hearing, the parties met in chambers and explained a new agreement reached by the parties. The government agreed to drop its opposition to application of U.S.S.G. § 3B1.3(b), move for the extra one-point reduction for acceptance of responsibility it had been opposing, and recommend a sentence of 53 months. A transcript was generated (doc. no. 52).

Immediately after the Court convened for the Sentencing Hearing, the following questioning of Mr.Schwartz by the Court occurred:

THE COURT: The parties have amended your plea agreement, Mr. Schwartz. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have you discussed that with your attorneys, the fact that they have moved the Court under Rule 11(1)( C) – or ( c)(1)( C)for a sentence that they have agreed to? Do you understand that?

8

THE DEFENDANT: I understand they've come to an agreement.

THE COURT: Have they told you what that agreement is?

THE DEFENDANT: Level 23, yes.

THE COURT: That's correct, level 23, criminal history category of I.

Now do you assent to that change to your Plea Agreement?

THE DEFENDANT: Yes, I do.

THE COURT: And you understand this is entirely your choice and you're free to proceed as we originally thought we were going to proceed today?

THE DEFENDANT: Yes, I do.

THE COURT: And do you have any questions of the Court at this time?

THE DEFENDANT: Not at this time, thank you.

THE COURT: And do you understand that obligation this Court has, if I agree – if I agree with the suggested range of 23 and the suggested criminal history category of I, that I am bound to impose a sentence within that guideline?

Do you understand that?

THE DEFENDANT: Yes, I do, yes.

After hearing arguments from the government and defense, the Court addressed Schwartz as follows:

THE COURT: Is there anything you wish to add in the way of my understanding of determining a sentence that is sufficient but not greater than necessary to meet my obligation under the statute? Anything you wish to add in mitigation? Whatever you wish to say at this time.

The movant responded that he appreciated the attendance of the Hadassah representatives and accepted responsibility. He apologized to all (doc. no. 51).

The Court sentenced Mr. Schwartz to 48 months on Count One and 36 months on Count Two, to be served concurrently, and to be followed by a term of supervised release

of 3 years. He was ordered to make restitution to Hadassah, the victim in Count One, in the amount of $2,492,469.00 and to the Internal Revenue Service, the victim in Count Two, in the amount of $935,217.12; pay a fine of $10,000.00 and a special assessment of $200.00, and forfeiture in the amount of $2,492,469.00. Judgment was entered.

Movant filed appeals on June 22, 2010 and May 5, 2011, addressing the writ of garnishment and the order of forfeiture. On November 28, 2012, a Mandate issued affirming the ordering of both. Movant sought a writ of certiorari from the United States Supreme Court, which was denied on March 20, 2013. Mr. Schwartz timely filed the Motion to Vacate on June 27, 2013.

## WAIVER OF RIGHT TO COLLATERAL ATTACK

The government argues that the defendant has waived the right to collaterally attack his sentence. The government points out that defendant's benefit from pleading guilty was that he was allowed to plead to a lower loss amount, which reduced his guideline range, and permitted him to pay a lower amount of restitution.

Paragraph 13 of the Plea Agreement, read into the record during the sentencing hearing, contains the following language:

In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, except the defendant retains the right to appeal whether the Court correctly calculates the advisory Sentencing Guidelines range or the government appeals the sentence.

During and after the reading of the Plea Agreement, Mr. Schwartz was asked if the government's recital of the terms of the plea agreement matched his own understanding. Each time he answered in the affirmative.

10

"It is well-settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197,199 (6th Cir.2004). Plea agreements must be interpreted according to traditional contract law principles. *See United States v. Bowman*, 634 F.3d 357, 360 (6th Cir.2011). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

The United States Court of Appeals for the Sixth Circuit first decided the question of "whether a plea agreement that waives the right to file for post conviction relief under § 2255 is enforceable when the petitioner claims ineffective assistance of counsel" in *United States v. Davila*, 258 F.3d 448, 451 (6th Cir. 2001).

> "We hold that Davila's waiver effectively foreclosed his right to bring a §
> 2255 petition based on the claim of ineffective assistance of counsel. When
> a defendant knowingly, intelligently, and voluntarily waives the right to
> collaterally attack his or her sentence, he or she is precluded from bring[ing]
> a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255."

Rule 11 of the Federal Rules of Criminal Procedure requires the Court to "inform the defendant of, and determine that the defendant understands . . .the terms of any plea agreement provision waiving the right to appeal or collaterally attack the sentence." Fed.R.Crim.P. 11(b)(1)(N). Complying with the provisions of Rule 11 is enough to demonstrate that the defendant entered into a waiver knowingly, voluntarily, and intelligently. *See, United States v. Sharp* , 442 F.3d 946, 950 (6th Cir.2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir.2006). The Court complied with the provisions of Rule 11. The Court finds that the movant knowingly, intelligently, and voluntarily waived his right to collaterally attack his sentence.

The Sixth Circuit has held that "in cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel .

11

. . it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself." *In re Acosta*, 480 F.3d 421, 422 (6th Cir.2007). Accordingly, the Court shall proceed to Mr. Schwartz' claims.

## § 2255 CLAIMS

Movant has presented his 13 grounds for relief in the 214-page  § 2255 Motion, including the 100-page exhibit book, and the 46-page supplement thereto.  The claims are clearly laid out and forcefully argued.

Movant contends that the lawyers who represented him during the course of his proceedings rendered constitutionally ineffective assistance.  The general allegations of ineffective assistance are based on failures of his attorneys, that include the following:

**Issue One**: Whether counsel was ineffective in that his attorneys should have "timely object[ed] or demand[ed] a hearing in regard to restitution and forfeiture as identified by the United States Court of Appeals, 6th Circuit in this case" (doc. no. 94, p. 34);

**Issue Two**: Whether  counsel was ineffective in that "[c]ounsel was not knowledgeable of the meaning of, and the difference between, restitution and forfeiture, and without such understanding, failed to request a hearing and permitted prosecutor's undocumented statements to determine sentence."  (doc. no. 94, p. 36);

**Issue Three**: Whether counsel was ineffective in failing to permit the movant's "attendance at the first in-Chambers Conference prior to Plea Hearing" (doc. no. 94, p. 42) ;

**Issue Four**: Whether counsel was ineffective because they withdrew an extensive letter prepared by the movant  (doc. no. 94, p. 46) ;

12

**Issue Five**:  Whether counsel was ineffective "for foregoing any opportunity to demonstrate the truthful absence of any loss on both counts" (doc. no. 94, p. 50);

**Issue Six**:  Whether counsel was ineffective in that the attorneys "wrongfully and ineffectively advised movant to accept responsibility for crimes and acts he did not do"; promised the allegations of the government had to be admitted to accomplish a Plea Bargain; and said that all facts could be later amended to permit a very nominal sentence to be imposed.  The revised facts would involve the interaction and priority consideration of the Hamilton County Probate Court.  Counsel misrepresented their knowledge and expertise in all matters relating to management of estates and Probate Court.  In lieu of their own lack of knowledge , counsel failed to hire expert counsel prior to any plea, and later, irrespective of any plea, in preparation of the sentencing.  Counsel failed to coordinate matters relating to pending Hamilton County Probate Court proceedings, including the continuing administration and final distribution of the estate.  The result would have been more favorable to defendant at the time of sentencing, notwithstanding the guilty plea."  (doc. no. 94, p. 53)

**Issue Seven**:  Whether counsel was ineffective in failing to hire a battery of experts on trusts and estates to investigate his theory of "no loss" (doc. no. 94, p. 60) ;

**Issue Eight**:  Whether counsel was ineffective for failing to attend a meeting with the probation officer, paying insufficient attention to the initial presentence report , failing to file objections, and agreeing to "an unfair point guideline" (doc. no. 94, p. 64) ;

**Issue Nine**:  Whether counsel was ineffective when they failed to prepare and demonstrate to the Court that there was no theft involved in the crime and present favorable facts and arguments  (doc. no. 94, p. 68) ;

**Issue Ten**:  Whether counsel was ineffective in that they failed to reveal conflicts of interest  (doc. no. 94, p. 80) ;

13

**Issue Eleven**: Whether counsel was ineffective in failing to explain the benefits of pleading "not guilty" and pursuing alternate strategies such as "lack of jurisdiction over Probate Court procedure and of subsequent trustees." (doc. no. 94, p. 84);

**Issue Twelve**: Whether counsel was ineffective in that they failed to assist movant in post conviction proceedings (doc. no. 94, p. 89) ;

**Issue Thirteen**: Whether counsel was ineffective for "failing from the onset to review, discuss, and consider" with movant "numerous particulars at critical stages to educate" movant "to properly provide sufficient representation." (doc. no. 94, p. 89)

Movant contends he is entitled to 1) vacation of his sentence of imprisonment; 2) vacation of the order of supervised release; 3) vacation of the monetary order of restitution as to Count One and the Court yielding to the jurisdiction of the Hamilton County Probate Court in Count One; 4) vacation of the monetary order for forfeiture; 5) vacation of the monetary order in respect to Count Two and the Court yielding to the disposition by the civil case pending in the United States Tax Court in Count Two; and 6) vacation of the fine order.

The government maintains that none of the lawyers performed deficiently, and that the movant waived his right to collaterally attack his sentence in his plea agreement.

## **GENERALLY APPLICABLE LAW**

### **1. § 2255**

A prisoner may attack the validity of his sentence under 28 U.S.C. § 2255, however, the habeas petition is subject to a one-year period of limitation. *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001). As noted above, the instant Motion was filed within the one-year statute of limitations.

Habeas relief under 28 U.S.C. § 2255 is available when an error qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994)(quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Relief is available when a "sentence is imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . ." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991)(quoting 28 U.S.C.§ 2255).

In order to prevail upon a motion to vacate a sentence under 28 U.S.C. § 2255, a movant must allege that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States,* 334 F.3d 491, 496-97 (6th Cir.2003), *cert. denied,* 540 U.S. 1133 (2004); *see also Moss v. United States,* 323 F.3d 445, 454 (6th Cir.), *cert. denied,* 540 U.S. 879 (2003)*; Weinberger v. United States,* 268 F.3d 346, 351 (6th Cir.2001).

"Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence." *Pough v. United States*, 442 F.3d 959 (6th Cir.2006); *McQueen v. United States,* 58 Fed.Appx. 73, 76 (6th Cir.2003)(citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir.1980).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir.1961**).** "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *3reen v. Wingo, 454 F.2d at 53; O'Malley,* 285 F.2d at 735.

15

## 2. Ineffective Assistance of Counsel

To obtain relief on a claim of failure to receive effective assistance of counsel, movant must show that his counsel's performance "fell below an objective standard of reasonableness" and that he was prejudiced by the result. *Glenn v. Tate*, 71 F.3d 1204, 1206 (6th Cir. 1995)(quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The *Glenn* Court stated at 1210-11.:

> Under the *Strickland* test, the movant must show a "reasonable probability" that, but for his counsel's unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The petitioner does not have to show that his counsel's deficient conduct "more likely than not altered the outcome in the case." *Id*. at 693, 104 S.Ct. at 2068. The "reasonable probability" of which *Strickland* speaks, rather, is "a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. at 2068. The question, in other words, is whether counsel's errors were serious enough to deprive the petitioner of a proceeding, the result of which was "reliable" *Id*. at 687, 104 S.Ct. at 2064-"whether counsel's conduct so undermined the proper functioning of the adversarial system that the trial [a term that includes capital sentencing proceedings] cannot be relied on as having produced a just result." *Id*. at 686, 104 S.Ct. at 2064.

The Sixth Circuit is in the minority of circuits which permits a restitution claim to be raised on collateral review, so long as it is tied to a claim of ineffective assistance of counsel. *Auyer v. United States*, 2011 WL 1323015 at *5, (E.D.Tenn.) *See, Weinberger v. United States*, 268 F.3d 346, 352 n. 1(6th Cir.2001)("We will follow this court's precedent...allowing a petitioner to contest a restitution order based on a meritorious ineffective assistance of counsel claim.")( citing *Ratliff v. United States*, 999 F.2d 1023, 1025-27 (6th Cir.1992).

## 3. Guilty Pleas

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id*.

In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett,* 907 F.2d 581, 585 n.6 (5th Cir.1990), *cert. denied,* 498 U.S.1033 (1991).

In evaluating whether an attorney's performance was constitutionally deficient, the Court's scrutiny of counsel's performance is highly deferential, and counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 689-690; *accord Bigelow v. Williams,* 367 F.3d 562, 570 (6th Cir.2004). The court "also must not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996), *overruled on other grounds, in re Abdur' Rahman,* 392 F.3d 174 (6th Cir.2004)(*en banc*). Defendants alleging the ineffective assistance of counsel bear "a heavy burden of proof." *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir.2005). A defendant challenging his attorney's conduct during plea bargaining "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. He must also show that his lawyers' deficiency was a decisive factor in his decision to plead guilty." *United States v. Pough,* 442 F.3d 959, 966 (6th Cir.2006); *citing* (*United States v. Cieslowski,* 410 F. 3d 353, 358-59 (7th Cir.2005)).

Plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York,* 404 U.S. 257, 260 (1971). It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, "a plea bargain itself is contractual in nature and 'subject to contract-law standards.' " *United States v. Krasn,* 614 F.2d 1229, 1233 (9th Cir.1980), *quoting United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979). To allow defendant to attempt to prove by unsupported allegations that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards.

As stated by the Sixth Circuit when faced with a challenge to a plea bargain based upon alleged off-the-record statements:

"[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers,* 170 F.3d 560, 566 (6th Cir.1999) (quoting *Baker v. United States,* 781 F.2d 85, 90 (6th Cir.), *cert. denied,* 479 U.S. 1017 (1986). Although Petitioner may in hindsight regret entering the plea, such "buyer's remorse" does not equate to finding that his counsel was ineffective or that his plea was involuntary. Defendant's mere statement that he would not have pleaded guilty is not a "show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Defendant's decision to lie to the district court cannot amount to prejudice. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir.1992).

The Supreme Court of the United States in *Brady v. United States*, 397 U.S. 742, 748 (1970) explained:

That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the

18

foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, the due process right can be waived, as can others, by the entry of a knowing and voluntary guilty plea. *See, Brady v. United States,* 397 U.S. 742 (1970). The plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. *See, United States v. Broce,* 488 U.S. 563 (1989).

## 4. Voluntariness of Plea

"A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant." *United States v. Webb*, 403 F.3d 373, 378 (6th Cir.2005)(citing *Brady v. United States,* 397 U.S. 742 (1970)). Accordingly, a district court may only accept a guilty plea after assuring itself that the defendant understands his or her constitutional rights, the consequences of pleading guilty, the nature of the crime charged, and any applicable appellate waiver. In addition, the court must ensure that the plea is voluntary and factually

supported. *Id.*; Fed.R.Crim.P. 11(b)(1)–(3). A defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements to the sentencing judge. *United States v. Todaro*, 982 F.2d 1025, 1030. (6th Cir.1993).

The plea colloquy is the Defendant's opportunity to voice any reservations he may have had concerning the representation he was receiving or the terms of the plea agreement. A proper plea colloquy serves to cure any such misunderstandings or problems a defendant may have concerning the implications of a guilty plea. *Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir.1999). A defendant's "solemn declaration of guilt carries a presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).


## ANALYSIS


Mr. Schwartz' claims fail under both prongs of an ineffective assistance of counsel claim. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court finds movant has failed to make claims of ineffective counsel which rise to the level of constitutional violations, has failed to substantiate the claims of ineffective assistance of counsel he has made, and makes no showing that deficient representation prejudiced his defense in any way. Movant presents no evidence to support his claims other than his inherently incredible assertions which conflict with evidence on the record.

At the outset, the Court notes that movant Mr. Schwartz was a practicing lawyer for approximately forty years. Even accepting his assertion that he was not familiar with criminal law, it is probable that he appreciated the legal significance of a waiver and the seriousness of statements made under oath. All evidence in the record supports a finding that Schwartz understood the consequences of his actions when he entered into all terms of the plea agreement and that he did so knowingly, intelligently, and voluntarily.

The Court finds the terms of the plea agreement, including the waiver, are valid. At movant's arraignment, the district court began by inquiring into his competency. Mr. Schwartz testified that he had no alcohol or medication in his system. Thereafter, the district court questioned movant regarding his understanding of the Information, the Plea Agreement, and the Statement of Facts. Movant acknowledged that he had reviewed these documents with his attorney and that he understood the terms and conditions of the plea. He specifically acknowledged his understanding of the nature of the charges during the hearing. *See Brady v. United States,* 397 U.S. 742, 756, (1970) (holding that plea was intelligently made when the defendant "was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties"); *United States v. Wilson,* 438 F.3d 672, 673–74 (6th Cir.2006) (holding plea to be knowing and voluntary when the district court reviewed the charges with defendant, verified defendant's understanding of the plea agreement and the voluntariness of the plea).

In the Introduction to the § 2255 Motion, Mr. Schwartz explains his relationship with Mrs. Hersh. He explains how she came to trust him and his method of personal charity and her growing mistrust of Hadassah. He states at page 24 of doc.no. 94, "I was permitted during her life to use my own discretion and this was to continue under the trust. There was no restriction on helping friends. . . "

He also introduces his theory of the case which underlies his arguments in support of his claims of ineffective assistance of counsel, that the activities involved in this case were more properly under the jurisdiction of the Hamilton County Probate Court. He first presented it in his sentencing materials. It is also incorporated into parts of Issues I, II, V, VI, VII, IX, XI, and XIII. Each is based on a different aspect of the theory, but basically relates to counsel's failure to argue the Probate Court theory or preventing him from

21

doing so.  The argument is most clearly illustrated in this excerpt from the  § 2255 Motion:

> "Counsel misrepresented their knowledge and ability to deal with Probate Court proceedings as related to the criminal action.  Fleisher, in particular misrepresented that he and his office knew Hamilton County Probate procedure. I expected he would have been appropriately prepared to address all Probate Court concerns.  He was not knowledgeable and was unprepared.  He said nothing at the Sentencing Hearing.
>
> As soon as the federal investigation began, counsel should have coordinated Probate Court proceedings between my expert estate advisors and the federal officers.  Federal court should have been advised of the jurisdictional concerns prior to any Plea Hearing.  The logic of priority was to first resolve the Probate Control and administration of the estate, including the issuance of a <u>Federal Estate Tax Closing Letter</u> following the federal estate tax audit before presuming that Hadassah was criminally suffering a loss.

(doc. no. 94, p. 54).

> The government, without considering the need for normal adjustments, such as taxes, approved fees and administrative expenses, wrongfully claimed $2,492,469, which was 20% of the entire un-adjusted gross estate.  Taxes, fees, and Probate Court approved expenses would first be subtracted to compute the Adjusted Gross Estate.  This was to

> be a Probate Court administrative determination and a federal
> estate tax audit prior to any federal criminal action

(doc. no. 94, p. 55).

Despite this, movant entered a plea to federal crimes to which this defense is irrelevant. Pursuant to the record established during the Change of Plea Hearing, upon which the Court is entitled to rely, Mr. Schwartz admitted under oath guilt to all the facts and crimes enumerated in the Information and Statement of Facts.  The actions he admitted under oath on the record fulfilled all the elements of the federal crimes charged.  Mr. Schwartz admitted to disbursing approximately $9,000,000.00, partially from a fund which was created for another purpose, more money than he was given discretion to access.  In the plea agreement, Mr. Schwartz agreed to the loss amount used to calculate his guideline range and agreed to the stipulated guideline calculations contained in the presentence report. He never denied sending the United States Estate Tax Return (form 706) to the government. He signed a Plea Agreement obligating himself to pay restitution in the amount of at least $2,492,469.00 and income tax consistent with the policies of the Internal Revenue Service.  Also under oath, he denied any other promises or threats induced him to plead guilty.  He attested thereto several times on the record.

In the  § 2255 Motion, Mr. Schwartz now describes his plea hearing as follows: "I painfully continued to respond 'Yes' to the prosecutor's fabricated presentation suggesting, but not actually stating, that I was a thief, that I personally caused a loss to Hadassah of $2.5 million and that I cheated on my taxes." (doc. no. 94, p.26).  "I did not want to defeat the 'plea agreement' that was said to be in my best interest." (*Id.,* p. 27). Movant suggests that he was told that he "must agree to all that the prosecutor stated in order to get a lesser sentence than the prosecutor had threatened.  Again I was told that it would be fixed later, and with the truth known, there would be a very moderate sentence." (*Id.,* p.25).

A sample of quotations from movant's letter of March 18, 2010, sent to the probation officer on the eve of sentencing, may convey insight into his recognition and understanding of the crime he truly committed. Mr. Schwartz sent it to her with the stated purpose that he convince her to "reconsider your recommendation of sentence". He states that "no judicial punishment could make me feel more remorseful and saddened by the way I managed the trust . . ." and "I was very unprofessional" "rather than giving to qualified charities" "My client was the language of the trust I missed that point and that is where I faulted." "I had no intention to commit a crime when I began working as trustee. I respectfully rest on my plea of guilty to the charges identified."

Mr. Schwartz' argument in support of his claim in Issue I is based on a misunderstanding of the holding in *United States v. Schwartz*, 503 Fed. Appx. 443, 447-48 (6th Cir.2012), where the court held that "it matters not whether the motion for and the order entered by the district court in this case were styled 'preliminary' or 'final' because the effect was the same for Schwartz" and Schwartz could not provide "any specific , colorable objections that he would have made to a preliminary order." The Sixth Circuit court added that "in its own review, this Court has not unearthed any prejudice to Schwartz" owing to the failure. *Id.* The Sixth Circuit noted that Schwartz agreed in his plea agreement that "the readily proveable fraud loss caused by the defendant was $2,492,469." *Id.* at 448, and mandatory restitution in the amount of at least $2,492,469. " *Id.*

In Issue II, Mr. Schwartz provides no explanation as to why the failure of counsel to understand the difference between restitution and forfeiture rendered their performance below an objective standard of reasonableness.

24

Mr. Schwartz fails to show deficient performance or prejudice in Issue III. Since no substantive decisions were made during the presentencing conference, movant's presence was not required. More importantly, during the sentencing hearing immediately following the conference, Mr. Schwartz confirmed his knowledge of and agreement with the subject of the conference. Given the opportunity to do so during the hearing, he failed to raise any objections or arguments to counsel's actions in the conference, as he now claims he would have if he had attended the conference.

As to the issues raised in Count IV, the movant recognizes elsewhere in the motion that the Court reviewed the letter upon which the claim is based. There could be no prejudice.

Issues V, VIII, and IX relate to claims of deficient performance regarding the guidelines applied in this case to determine the sentence. The Court finds counsel made all significant decisions in the exercise of reasonable professional judgment. There is no evidence to the contrary. The Court finds unequivocally that the result of proceeding without the benefit of the plea agreement would have been less favorable to the movant. The Plea Agreement limited the loss used to determine the guideline range to $2,492,469.00 .

Any claim that counsel was not actively involved in the presentence process is contradicted by the record. Moreover, there is no prejudice to be shown because movant received the sentence counsel bargained for and Mr.Schwartz agreed to. The guidelines had been agreed upon in the plea agreement. All the enhancements were appropriate, supported by evidence and sworn admissions in the record. Counsel cannot be deemed ineffective for failing to raise meritless objections. *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir.1998); *Greer v. Mitchell*, 264 F.3d 663 676 (6th Cir.2001). Had counsel not been able to negotiate the plea agreement allowing him to receive the three points for acceptance of responsibility and timely plea, he would have faced a higher guideline range.

The claims raised in Issues VI, VII, and XIII are not cognizable in a § 2255 proceeding because none of these errors, if they occurred, rise to a level of a fundamental defect in the process. The arguments are frivolous and totally irrelevant to the federal offense. The federal crime here is the scheme to defraud Hadassah, as evidenced by the federal Estate Tax form and the failure to disburse that much money, and failure to report the money he gave himself. The restitution amount was taken straight from the Estate Tax form. The mail was used to perpetrate the scheme to keep the money from the victim. Movant spent the money he reported was payable to the victim. Movant could have explained his theories if he had taken advantage of his many chances to talk in the two hearings. The fact that Beverly Hersch may have wanted him to disburse the money this way has no relevance to the crime he is guilty of committing. Schwartz has not identified, nor does the record reveal, any evidence or argument that counsel failed to present that would have altered the outcome of his criminal proceedings. Experts would not have altered the outcome because the facts were admitted under oath. According to the government, any investigation would have resulted in higher numbers. This discussion was not relevant to the sentencing, nor is it relevant to the § 2255 issues. For these reasons, the Court rejects all claims that attorneys were incompetent for failing to deal with this case as if it was a probate matter.

In Issue X, Mr. Schwartz claims ineffective assistance by virtue of a conflict of interest, yet has not shown that his attorney actively represented actual conflicting interests, which are significant. *See, Cuyler v. Sullivan*, 446 U.S. 335 (1980): *Thomas v. Foltz,* 818 F.2d 476 (6th Cir.), *cert. denied,* 484 U.S. 870 (1987). The five instances claimed, 1) confusion as to when representation commenced, 2) involvement of counsel's staff member in letter-writing campaign against movant, 3) two letters purportedly written by co-counsel, not part of charged offense, 4) failure to make a "claim" against a law firm as mitigation for Schwartz's

crimes, and 5) the deposit of a retainer, do not justify such a claim since none shows that counsel were prevented from doing their duty.

In Issue XI, Mr. Schwartz contentions regarding counsel's failure to raise frivolous defenses, failure to invoke the jurisdiction of the Probate Court, failure to discuss rudimentary rules of criminal law are unsubstantiated.

In Issue XII, Mr. Schwartz claims that "counsel failed to respect, investigate, advise, and respond to Defendant's rights and requests for post-conviction relief." There is no constitutional right to counsel post conviction, therefore, no constitutional claim.

The Court rejects any of the movant's claims based on his allegations of reliance on other promises by his attorneys. There is simply nothing in the record, and Mr. Schwartz offers no additional evidence, to indicate that his counsel in any way tricked or induced the him to agree to the terms of the plea arrangement accepted by the Court. Even assuming his allegations are true, he has neither alleged nor demonstrated a reasonable probability that, but for his counsel's errors and deficient performance he would not have pleaded guilty and would have insisted on going to trial on all of the charges against him. It is obvious from the record that he could not.

Based on all information submitted, the Court finds there was no prejudice to movant as a result of any of counsel's actions listed in his claims. Prior to the movant's plea, counsel had negotiated the favorable plea agreement to which he was allowed to plead. It incorporated only the amount of loss to Hadassah, which was obvious and proveable because it was drawn straight from the Estate Tax form Mr. Schwartz sent to the Internal Revenue Service. In it, movant stated how much the victim was owed and, then, didn't pay them. In the plea agreement, he agreed to the payment of that amount and a determination of the tax loss according to the policies of the Internal Revenue Service. He agreed that he abused a position of trust. He got everything he asked for. His attorneys fought for this result and everything they did was with this goal in mind. The attorneys were operating

27

Case: 1:09-cr-00067-SJD-MRM Doc #: 106 Filed: 12/01/14 Page: 28 of 29  PAGEID #: 870

above an objective standard of reasonableness. The attorneys' actions illustrate a thorough and complete understanding of the case and the application of the sentencing guidelines thereto.

Movant has also failed to show prejudice or that there is a reasonable probability that the result would have been different. Movant did not prove that the outcome of his plea process would have been different with other advise. Schwartz has not presented any evidence or possible alternatives which would have him serving less time in jail. There was no miscarriage of justice. This was a reliable proceeding. The Court has complete confidence in the outcome. Mr. Schwartz' factually unsupported allegations are insufficient to support an evidentiary hearing or a request for relief.

## CONCLUSION

Pursuant to Title 28 U.S.C. § 2255, the Court finds that motions, files, and records of this case conclusively show that the movant is not entitled to relief, therefore, a hearing is not necessary to determine the issues and make the findings of fact and conclusions of law with respect thereto. The claims raised are conclusively contradicted by the record and the well-settled law of the Sixth Circuit and the United States Supreme Court.

Movant has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253( c); Fed. R. App.P. 22(b), as amended by § 103 of the AEDPA. The Motion for Modification of Sentence and/or Vacation of Conviction Pursuant to 28 U.S.C. § 2255 (doc. no. 94) is **DENIED**. All other pending motions are rendered **MOOT** and **DENIED**. The case is **DISMISSED**.

     **IT IS SO ORDERED.**

Herman J. Weber, Senior Judge
United States District Court